# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Samsung Cellular Telephone, Black | ) ) ) ) ) ) Case No. **20mj2520** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 49 USC § 46505 | Carrying a Weapon or Explosive on an Aircraft |
| 21 USC § 841 | Possession or Possession with the Intent to Distribute a Controlled Substance |
| 18 USC § 922(g) | Felon in Possession of a Firearm or Ammunition |

The application is based on these facts:
See Attached Affidavit of FBI Special Agent Andrew Cahill, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Andrew Cahill, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 6/25/2020

*Judge's signature*

City and state: San Diego, California     Hon. Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

Samsung Cellular Telephone, Black

**Target Telephone #2**

Currently in possession of the Federal Bureau of Investigation (FBI) San Diego located in the FBI Evidence Vault at FBI San Diego Headquarters, 10385 Vista Sorrento Parkway, San Diego, California 92121.




## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones for evidence described below. The seizure and search of the cellular/mobile telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 17, 2020, up to and including March 17, 2020:

a. tending to indicate efforts to carry a weapon onto an aircraft, possess methamphetamine, possess methamphetamine with the intent to distribute, and possess a firearm or ammunition after sustaining a felony conviction;

b. tending to identify communications, photographs, videos, or other data shared with co-conspirators coordinating and then executing the intent to carry a weapon onto an aircraft, possess methamphetamine, possess methamphetamine with the intent to distribute, and possess a firearm or ammunition after sustaining a felony conviction;

c. tending to identify Internet and Web-search history relating to the intent to carry a weapon onto an aircraft, possess methamphetamine, possess methamphetamine with the intent to distribute, and possess a firearm or ammunition after sustaining a felony conviction;

d. tending to identify communications, photographs, videos, or other data about covering up or hiding the crime and escaping or hiding from law enforcement;

e. tending to identify the user of, or persons with control over or access to, the subject telephones; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 49, United States Code, Section 46505(b)(1); Title 21, United States Code, Section 841; and Title 18 United States Code, Section 922(g).

The seizure and search of the cellular phones shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Andrew Cahill, having been duly sworn do hereby state that the following is true to my knowledge and belief.

**INTRODUCTION**

1. This affidavit supports an application for a warrant to seize and search the following electronic devices:

   a. Samsung Galaxy Note 9 (SM-N9600) Cellular Telephone
      Alpine White, 128 GB
      Bar Code: 357594/09/123590/4
      **Target Telephone #1**

   b. Samsung Cellular Telephone, Black
      **Target Telephone #2**

as described in Attachments A-1 and A-2, and to seize evidence of crimes and property designed for use, intended for use, or used in committing a crime as described in Attachment B, specifically, in violation of 49 U.S.C. Section 46505(b)(1), Carrying a Weapon or Explosive on an Aircraft, with the intent to travel internationally, 18 U.S.C. Section 922(g)(1), Felon in Possession of a Firearm, and in violation of 21 U.S.C. Section 841, Possession of a Controlled Substance with the Intent to Distribute. This search supports the investigation of Elan Leroy Gwynn (GWYNN) and others for the above-mentioned crime. The Target Telephones are currently in the possession of the Federal Bureau of Investigation (FBI) San Diego located in the FBI Evidence Vault at FBI San Diego Headquarters, 10385 Vista Sorrento Parkway, San Diego, California 92121.

The Honorable Mitchell D. Dembin previously issued search warrant numbers 20-MJ-1172 and 20-MJ-1173 for **Target Telephone #1** and **Target Telephone #2**. Due to the COVID-19 pandemic and the California stay-at-home order, agents were not able to execute those warrants or search the Target

Telephones before the warrants expired.

The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Telephones, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING AND EXPERIENCE

2. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

3. I am a Special Agent with the FBI, and have been so employed since February 2020. I am currently assigned to the Joint Terrorism Task Force out of the San Diego Field office where I investigate crimes of terrorism. Prior to being assigned to the San Diego Field Office, I completed twenty-one (21) weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects.

4. Prior to becoming a Special Agent with the FBI, I graduated from Wentworth Institute of Technology with a degree in Electromechanical Engineering in 2014 and worked as an Electrical Engineer until June 2019.

5. My training and experience as a Special Agent and FBI employee, my participation in investigations and my interactions with other agents, as well as with other state and local law enforcement officers familiar with counterterrorism, form the basis of opinions and conclusions set forth below. The facts are described in substance not verbatim, unless otherwise noted.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in counterterrorism, transportation of firearms, and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in transporting firearms and narcotics trafficking may yield evidence:

    a.    tending to indicate efforts to carry a weapon onto an aircraft, possess methamphetamine, possess methamphetamine with the intent to distribute, and possess a firearm or ammunition after sustaining a felony conviction;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate transporting firearms and narcotics trafficking;

    c.    tending to identify co-conspirators, criminal associates, or others involved in transporting firearms and narcotics trafficking;

d. tending to identify travel to or presence at locations involved in the transportation of firearms and narcotics trafficking, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Telephones; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS IN SUPPORT OF PROBABLE CAUSE

7. On March 17, 2020, defendant ELAN LEROY GWYNN, when attempting to get on American Airlines Flight AA1064 from San Diego International Airport to Dallas/Fort Worth International Airport and later American Airlines Flight AA20 from Dallas/Fort Worth to London Heathrow, did knowingly have a concealed dangerous weapon in his carry-on luggage that was and would have been accessible to him in flight.

8. At approximately 8:45 am, GWYNN entered the San Diego International Airport, which is in the Southern District of California. GWYNN was traveling with his mother. They both checked in at the ticket counter at approximately 9:00 am. GWYNN checked one piece of luggage and his mother checked two pieces of luggage. They then proceeded to the Transportation Security Administration (TSA) security checkpoint five, which is located in terminal two.

9. At the checkpoint, GWYNN presented his identification and boarding pass. GWYNN then entered lane seven and placed his carry-on bag on the conveyor belt for the X-ray machine. A TSA Officer identified an object that appeared to be a loaded firearm in GWYNN's bag on the X-ray machine. Per TSA procedure, a TSA supervisor was notified and subsequently the San Diego Harbor Police (HPD) were called.

10. At the same time his bag was being scanned GWYNN was being processed through the body scanner, which showed an anomaly in his groin area. GWYNN said, "I have Chapstick," and a TSA Officer conducted a pat-down. The officer discovered a vial that contained a white substance. TSA notified HPD about the vial.

11. HPD Officer Bishop responded at approximately 9:30 am. Officer Bishop approached GWYNN and asked if the bag was his. GWYNN stated that it was his bag. Officer Bishop asked if there was anything dangerous inside. GWYNN stated, "yes, my gun." GWYNN then said the gun belonged to his friend but that he could not remember his friend's name. GWYNN's mother stated that her son had been stressed and forgot that he put the gun in the bag, and that the gun belonged to her deceased husband. GWYNN then stated that it was his father's gun. Officer Bishop asked GWYNN if he was on probation or parole. GWYNN stated he was not, but that he had a felony conviction related to narcotics.

12. Officer Bishop retrieved GWYNN's bag and took it into a room to secure the firearm, a Glock 19 replica ghost gun with a fifteen-round magazine loaded with eleven 9-millimeter rounds of ammunition. A "ghost gun" is a firearm made by an individual without a serial number or other identifying markings. The gun was loose in the bottom of the bag. Also found inside the bag was a drug pipe.

13. After securing the firearm, Officer Bishop returned and told GWYNN that he was going to be taken into custody. At that time, Officer Bishop observed a vial in GWYNN's hand. GWYNN said the vial contained "salt for my margaritas." GWYNN later admitted that the vial contained methamphetamine.

14. GWYNN was secured and taken to the HPD security office where he was placed under arrest at approximately 5:00 pm. GWYNN's cellular phones (**Target Telephone #1** and **Target Telephone #2**) were subsequently taken by HPD and kept with his personal effects. GWYNN's personal effects were turned

5

over to the FBI (TFO Silva and Special Agent Cahill) on March 18, 2020 at approximately 7:00 am.

15.  On March 18, 2020 at approximately 8:00 am GWYNN was transported from San Diego Central Jail, where he spent the night, to Metropolitan Correction Center (MCC) San Diego. TFO Silva and Special Agent Cahill were escorting GWYNN. Upon GWYNN's arrival at MCC a search was conducted and a plastic sandwich bag containing a white crystalline substance was found on his person. The white crystalline substance, which was preliminarily field tested and determined to be methamphetamine, was in the front right pocked of a pair of athletic shorts that GWYNN was wearing beneath his pants.

## METHODOLOGY

16.  It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software.

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect **Target Telephone #1** and **Target Telephone #2** and subject them to analysis. All forensic analysis of the data contained within the telephones and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date the warrant is signed, absent further application to this Court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

19. The Honorable Mitchell D. Dembin previously issued search warrant numbers 20-MJ-1172 and 20-MJ-1173 for **Target Telephone #1** and **Target Telephone #2**. Due to the COVID-19 pandemic and the California stay-at-home order, agents were not able to execute those warrants or search the Target Telephones before the warrants expired.

**CONCLUSION**

20. Based on all the facts and circumstances described above, there is probable cause to conclude that **Target Telephone #1** and **Target Telephone #2** were used to facilitate violations of 49 U.S.C. Section 46505(b)(1), Carrying a

7

Weapon or Explosive on an Aircraft, with the intent to travel internationally; 21 U.S.C. Section 841, Possession of a Controlled Substance and Possession of a Controlled Substance with Intent to Distribute; and 18 U.S.C. Section 922(g)(1), Felon in Possession of a Firearm.

21. There is probable cause to believe that evidence of illegal activities committed by GWYNN exists on the **Target Telephone #1** and **Target Telephone #2**. As stated above, I believe that the date range for this search is from February 17, 2020 through March 17, 2020.

22. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to seize and search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachment B, using the methodology described above.

Andrew Cahill
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __25__ day of June, 2020.

Hon. Mitchell D. Dembin
United States Magistrate Judge